USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-12-05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DEIULEMAR COMPAGNIA DI          :
NAVIGAZIONE SpA,

                                :

            Plaintiff,

                                :    05 Civ. 8199 (RMB)(HBP)

      -against-

                                :

DABKOMAR BULK CARRIERS LIMITED,      REPORT AND
DABKOMAR DENIZCILIK VE TICARET  :    RECOMMENDATION
AS, a/k/a "Dabkomar Denizcili
Acentelik Marina Isletmeleri    :
Turizm Ve Sinai Mamuller Ticaret
Anonim Sirketi," a/k/a Dabkomar :
Shipping & Trading," a/k/a
"Dabkomar Shipping S.A.,"       :

            Defendants.         :

----------------------------------X

            PITMAN, United States Magistrate Judge:

            TO THE HONORABLE RICHARD M. BERMAN, United States

District Judge

I.  Introduction

            Dabkomar Denizcilik ve Ticaret Anonim Sirketi

Instanbul/Turkey, sued herein as Dabkomar Denizcilik ve Ticaret

AS ("Dabkomar AS"), moves by way of Order to Show Cause for an

Order pursuant to Rule E(4)(f) of the Supplemental Rules for

Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure (the "Admiralty Rules"), vacating the Amended

Order of Attachment issued in this action on October 3, 2005

(Docket Item 6) and dismissing the complaint as to Dabkomar AS pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Dabkomar AS also moves, in the alternative, for security for its costs. Plaintiff has cross-moved for sanctions pursuant to Fed.R.Civ.P. 11.

For the reasons set forth below, I respectfully recommend that: (1) Dabkomar AS's motion to vacate the attachment be granted; (2) Dabkomar AS's motion to dismiss the complaint as to it for lack of personal jurisdiction be granted; (3) Dabkomar AS's motion to dismiss the complaint for failure to state a claim and for security be denied as moot, and (4) plaintiff's motion for sanctions be denied.

II.  Facts

A.  Plaintiff's Claim

This is an admiralty action arising out of the breach of a charter party.

As alleged in plaintiff's amended verified complaint ("Am. Compl."), on or about March 16, 2005, plaintiff chartered a vessel to Dabkomar Bulk Carriers Ltd. ("Dabkomar Bulk") for approximately two and one-half years at the rate of $45,000 per day (Am. Compl. ¶ 4). Plaintiff alleges that Dabkomar Denizcilik ve Ticaret AS, a/k/a "Dabkomar Denizcili Acentelik Marina

2

Isletmeleri Turizm ve Sinai Mamuller Ticaret Anonim Sirketi,"
a/k/a "Dabkomar Shipping & Trading," a/k/a "Dabkomar Shipping
S.A.," guaranteed Dabkomar Bulk's performance of the charter
party (the "Charter") (Am. Compl. ¶ 5).[1] According to plaintiff,
Dabkomar Bulk used the vessel for approximately six months and
then repudiated the Charter, despite the fact that it still had
approximately two years to run (Am. Compl. ¶ 6).

Plaintiff seeks to recover damages for Dabkomar Bulk's
use of the vessel up to the date of repudiation and the differ-
ence between the contract price and the fair market value of the
use of the vessel for the unexpired term of the Charter, together
with interest and attorney's fees (Am. Compl. ¶¶ 7-12). Exclu-
sive of interest, costs, arbitration fees and attorney's fees,
the amount sought by plaintiff is $14,547,137.00 (Am. Compl. ¶
12).

## B. Proceedings to Date

Plaintiff commenced this action on September 23, 2005
and on that date secured an Order of Maritime Attachment and

---

[1]The Charter itself provides that it is an agreement between
plaintiff and "Messrs. Dabkomar Bulk Carriers Limited (whose
performance to be wholly guaranteed by Messrs. Dabkomar Deniz
Acenteligi Marina Isletmeleri Turizm ve Sinai Mamuller, A.S.,
Istanbul, Turkey . . ." (Exhibit 1 to the Declaration of William
N. France, Esq., dated November 2, 2005 ("France Decl."), at 1).
Curiously, the Charter was never signed by any party to it
(Declaration of Trifon Tsentides, dated November 1, 2005
("Tsentides Decl.") ¶ 26).

3

Garnishment pursuant to Admiralty Rule B. The Order of Attachment was predicated on the existence of a maritime claim and the fact that Dabkomar AS could not be found within the Southern District of New York (see Admiralty Rule B(1)(a)); plaintiff did not argue that collection of any judgment would be in jeopardy absent the order of attachment (see Memorandum of Law in Support of Plaintiff's Petition for Issuance of an Admiralty Rule B Process of Maritime Attachment and Garnishment, dated September 22, 2005 (Docket Item 3)).

By October 7, 2005, plaintiff had garnished assets belonging to Dabkomar AS with a face value of $20,000 (Declaration of John J. Sullivan, Esq., undated (Docket Item 17), ¶ 4). On October 21, Dabkomar AS made the pending motions and secured an Order staying further attachments pending the resolution of these motions (Docket Items 10, 11).

Dabkomar AS argues that the Order of Attachment should be vacated and the action dismissed as to it because: (1) it is not a party to the alleged guaranty; (2) the alleged guaranty of performance was made by an individual who had no authority to bind Dabkomar AS; (3) the Charter is governed by English law and, under English law, the language of the alleged guaranty does not give rise to a guaranty, and (4) plaintiff has admitted that it has no claim against Dabkomar AS (Sullivan Decl., ¶ 7; Reply Memorandum of Law (Corrected) of Defendant Dabkomar Denizcilik ve

4

Ticaret A.S. in Support of Its Order to Show Cause to Vacate
Maritime Attachments Against It, dated November 15, 2005
("Dabkomar AS Reply Mem."), at 4-5).

In addition to the proceedings in this Court, plaintiff
has also commenced an arbitration proceeding in London against
Dabkomar Bulk and has attempted to commence both an arbitration
proceeding and a legal action against Dabkomar AS in the Commer-
cial Court of the Queen's Bench Division of the High Court in
London (Declaration of Nicholas John Ashley Shaw, dated November
2, 2005 (11-2-05 Shaw Decl."), ¶ 10). Dabkomar AS has not
consented to the jurisdiction of the arbitrator, resulting in the
action in the High Court in which plaintiff seeks a declaration
that Dabkomar AS is bound to guarantee the performance of
Dabkomar Bulk (11-2-05 Shaw Decl., ¶ 10). At last report,
plaintiff had commenced the High Court proceeding but was still
attempting to effectuate service on Dabkomar AS (Declaration of
Nicholas John Ashley Shaw, dated November 21, 2005 (11-21-05 Shaw
Decl."), ¶ 3).

III.  Analysis

    A.  Plaintiff's Burden under
        Admiralty Rule E(4)(f)

Where, as here, a plaintiff has secured an ex parte
order of attachment under Admiralty Rule B, Admiralty Rule

5

E(4)(f) imposes the burden on such plaintiff, upon defendant's motion, "to show why the . . . attachment should not be vacated . . . ." It appears that a plaintiff discharges this burden when it shows that the order of attachment was properly issued under Admiralty Rule B(1)(a). See Blake Maritime, Inc. v. Petrom S.A., 05 Civ. 8033 (PAC), 2005 WL 2875335 at *2 (S.D.N.Y. Oct. 31, 2005); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 384 F. Supp.2d 726, 729 (S.D.N.Y. 2005); HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A., 04 Civ. 6884 (NRB), 2005 WL 1036127 at *2 (S.D.N.Y. May 4, 2005).[2]

A maritime order of attachment is properly issued "when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district." 1985 Advisory Committee Note to Admiralty Rule B; see also Blake Maritime, Inc. v. Petrom S.A., supra, 2005 WL 2875335 at *2; Parkroad Corp. v.

---

[2]Aqua Stoli Shipping suggests that, in addition to "all technical requirements," the plaintiff must show at the Rule E(4)(f) hearing that the attachment "is reasonably calculated to serve at least one of the two historical purposes of obtaining jurisdiction or securing a judgment and is not simply a tactical device designed to harass the adversary in an ongoing litigation." 394 F. Supp.2d at 729. As noted in Aqua Stoli Shipping, courts have reached conflicting results concerning the existence of this broader requirement. See 384 F. Supp.2d at 729. Since Dabkomar AS's arguments here are limited to plaintiff's alleged failure to meet the "technical requirements" for a maritime order of attachment, I need not address whether the broader showing suggested in Aqua Stoli Shipping need be made.

6

China Worldwide Shipping Co., 05 Civ. 5085 (GBD), 2005 WL 1354034 at *1-*2 (S.D.N.Y. June 6, 2005); Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS, 78 F. Supp.2d 162, 166 (S.D.N.Y. 1999); 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 21-2 at 393 (4th ed. 2004). Dabkomar AS does not argue that it is present in the District; rather the only issue is whether plaintiff has made a prima facie showing that it has a maritime claim.

The law is not well defined concerning what a plaintiff must prove to discharge its burden of making a prima facie showing that it has a maritime claim. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., supra, 384 F. Supp.2d at 728. Some courts have found that the standard is satisfied if plaintiff demonstrates that the complaint meets the standards of Fed.R.Civ.P. 12(b)(6) and states a claim upon which relief can be granted. E.g., Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS, supra, 78 F. Supp.2d at 166. Other courts have found the standard satisfied where plaintiff submits evidence which, without regard to the evidence opposing it, could sustain a verdict in plaintiff's favor. E.g., Maritime Ventures Int'l., Inc. v. Caribbean Trading & Fid., Ltd., 689 F. Supp. 1340, 1348, 1356 (S.D.N.Y. 1988). Other courts have interpreted Admiralty Rule E(4)(f) as establishing a probable cause standard. E.g., Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3rd Cir. 1989). And one court has applied a Fed.R.Civ.P. 12(b)(6) standard but

considered evidence beyond the complaint.  Cashman Equipment
Corp. v. Trans Caribbean Transport Co., Ltd., Civ. A. No.
96-3116, 1996 WL 626294 at *2 (E.D. La. Oct. 29, 1996).

I conclude that the second-listed standard is the most
appropriate one.  First, as noted above, the Advisory Committee
Notes to the 1985 Amendments to Admiralty Rule B state that
plaintiff's burden is to make a "prima facie showing that he has
a maritime claim."  Although "prima facie showing" is used in
many different contexts with many different meanings, it is most
commonly understood as requiring evidence or, at least,  allega-
tions of fact which, if true, could sustain the ultimate proposi-
tion in issue.  New Moon Shipping Co. v. Man B & W Diesel AG, 121
F.3d 24, 29 (2d Cir. 1997) (prima facie showing of personal
jurisdiction is made "by alleging facts which, if true, would
support the exercise of the court's jurisdiction"); Fisher v.
Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997) (en banc),
abrogated on other grounds, Reeves v. Sanderson Plumbing Prods.,
Inc., 530 U.S. 133 (2000) ("'Prima facie case' denotes what
evidence a plaintiff must offer to avoid dismissal after presen-
tation of the plaintiff's direct case."); see also LaGrant v.
Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir. 1984); In
re Chicago Rys. Co., 175 F.2d 282, 289-90 (7th Cir. 1949);
Lamarca v. United States, 31 F. Supp.2d 110, 124 (E.D.N.Y. 1998);

8

Husbands v. Pennsylvania, 395 F. Supp. 1107, 1139 (E.D. Pa. 1975).

Second, the Advisory Committee Notes to the 1985 Amendments to Admiralty Rule B indicate that the amended rule was intended to insure that attachments in admiralty were "consistent with the principles of procedural due process enunciated by the Supreme Court in Sniadach v. Family Finance Corp., 395 U.S. 337 (1969); and later developed in Fuentes v. Shevin, 407 U.S. 67 (1972); Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974); and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975)." The common theme of these cases is that when a plaintiff seeks a prejudgment seizure of a defendant's property, Due Process requires an evidentiary showing of the claimant's probable entitlement either before or shortly after the seizure.[3] Maritime claims can be easily alleged. To hold that Admiralty Rule B(1)(a) is satisfied by a plaintiff's merely stating a maritime claim upon which relief can be granted sets too low a standard and is inconsistent with the decisions cited above.

The parties' own conduct here acknowledges that inquiry beyond the face of the pleadings is appropriate. As noted above,

---

[3]For example, in an effort to comply with the holding of North Georgia Finishing, New York requires that a party who has obtained an ex parte order of attachment show "the probability that [it] will succeed on the merits" at a post-attachment confirmation hearing. N.Y. C.P.L.R. §6223(b); see also Joseph M. McLaughlin, Practice Commentary to N.Y. C.P.L.R. § 6223 at C6223:5 (McKinney 1980).

9

the putative guarantor identified in the Charter at issue has a name slightly different from Dabkomar AS's. Nevertheless, as discussed below, plaintiff has offered the declaration of Tevfik Gur, along with a number of exhibits, to establish that the two names refer to the same entity. Thus, plaintiff itself has construed this motion as requiring something more than a bare Rule 12(b)(6) showing (see Plaintiff's Memorandum of Law in Opposition to Dabkomar AS's Order to Show Cause and in Support of a Cross-Motion for Award of Costs and Fees for Dabkomar's Violations of Rule 11, Fed.R.Civ.P., dated Nov. 2, 2005 ("Plaintiff's Memo."), at 10).

Finally, even if the proper standard is the probable cause standard suggested by plaintiff (see Plaintiff's Memo. at 9), the outcome in this case would not change. Although probable cause does not require a showing that the proposition in issue is more likely true than not true, Brinegar v. United States, 338 U.S. 160, 176 (1949); United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986); United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983); see also United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993); United States v. Nersesian, 824 F.2d 1294, 1306 (2d Cir. 1987), it does require that there be a "substantial chance" that the proposition is true. Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983); United States v. Harwood, 998 F.2d 91, 96 (2d Cir. 1993); Feinberg v. City of New York, 99 Civ. 12127 (RC),

10

2004 WL 1824373 at *2 (S.D.N.Y. Aug. 13, 2004). For the reasons explained at pages 13-19, below, there is no "substantial chance" that plaintiff will prevail on its guarantee claim against Dabkomar AS.

## B. Dabkomar AS's Arguments

Turning to Dabkomar AS's specific arguments, as explained below, I find that plaintiff has not shown that it has a prima facie maritime case against Dabkomar AS.

First, Dabkomar AS claims that it is not a party to the Charter and that there is no document evidencing a guaranty in its name. Dabkomar AS's argument here is based on the fact that the Charter refers to a putative guarantee by "Messrs. Dabkomar Deniz Acenteligi Marina Isletmeleri Turizm ve Sinai Mamuller, A.S., Istanbul, Turkey . . . ." (France Decl., Ex. 1 at 1), while Dabkomar AS's name is Dabkomar Denizcilik ve Ticaret Anonim Sirketi Instanbul/Turkey. Dabkomar AS argues that it is a different entity than that named in the Charter. In response, plaintiff has offered evidence that the two entities are one and the same. For example, plaintiff has offered evidence that in December 2004 Dabkomar Denizcilik Acentelik Marina Isletmeleri Turizm ve Sinai Mamuller, Ticaret Anonim Sirketi changed its name to Dabkomar Denizcilik ve Ticaret Anonim Sirketi (Declaration of Tevfik Gur, dated November 2, 2005 ("Gur. Decl."), ¶ 7 and Exs. 1

11

and 2 thereto). There also appears to be substantial overlap between the founders of Dabkomar Denizcilik Acentelik Marina Isletmeleri Turizm ve Sinai Mamuller, Ticaret Anonim Sirketi and Dabkomar AS (Gur. Decl., ¶¶ 6, 9). This evidence is sufficient to sustain a jury finding that Dabkomar Denizcilik Acentelik Marina Isletmeleri Turizm ve Sinai Mamuller, Ticaret Anonim Sirketi and Dabkomar Denizcilik ve Ticaret Anonim Sirketi are the same entity and plaintiff has, therefore, established a prima facie case that Dabkomar AS is the entity named in the Charter.

Dabkomar AS next argues that the individual who negotiated the Charter on behalf of Dabkomar Bulk and, allegedly, on behalf of itself, was not its agent and had no authority to bind Dabkomar AS to the alleged guaranty.

The Charter was negotiated by Trifon Tesentides on behalf of plaintiff and Sarp Sentuna, purportedly on behalf of Dabkomar Bulk and Dabkomar AS (Tsentides Decl., ¶¶ 5-27). Although plaintiff does not specify how Sentuna had authority to bind Dabkomar AS, there are only two possible theories -- actual authority and apparent authority. Under either theory, Sentuna's own statements and conduct are inadmissible to prove his alleged authority. Karavos Compania Naviera S.A. v. Atlantica Exp. Corp., 588 F.2d 1, 10 (2d Cir. 1978); United States v. Consol. Laundries Corp., 291 F.2d 563, 576 (2d Cir. 1961); Tarstar Shipping Co. v. Century Shipline, Ltd., 451 F. Supp. 317, 323

(S.D.N.Y. 1978); Marvin v. Wilber, 52 N.Y. 270, 273 (1873).
Since there is not a shred of evidence, apart from Sentuna's own
statements and conduct, that Sentuna had actual authority to bind
Dabkomar AS to the alleged guarantee, the only possibly viable
theory is apparent authority.

        "Apparent authority arises from the 'written or spoken
words or another conduct of the principal which, reasonably
interpreted, causes [a] third person to believe that the princi-
pal consents to have [an] act done on his behalf by the person
purporting to act for him.'" Dinaco, Inc. v. Time Warner, Inc.,
346 F.3d 64, 69 (2d Cir. 2003), quoting Minskoff v. Am. Express
Travel Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996); accord Bd. of
Educ. v. Conn. Gen. Life Ins. Co., 309 F. Supp.2d 416, 420-21
(E.D.N.Y. 2004). The only conduct arguably attributable to
Dabkomar AS -- Sentuna's putative principal -- that might have
conferred apparent authority on Sentuna is his use of an e-mail
address with the suffix "@dabkomar.com.tr" (Tsentides Decl., Ex.
TT passim). However, even if I assume that Sentuna's use of this
e-mail address was authorized by Dabkomar AS -- although there is
no evidence on this issue -- and make the further assumption that
this e-mail suffix is the web site of Dabkomar AS, the evidence
is still insufficient as a matter of law to sustain a finding of
apparent authority.

Strikingly similar facts were present in <u>Karavos</u>
<u>Compania Naviera S.A. v. Atlantica Export Corp.</u>, <u>supra</u>, 588 F.2d
1. In that case, plaintiff, the disponent owner of a ship,
alleged that the defendant had breached a charter agreement and
sought to enforce the arbitration clause in the charter agree-
ment. Like the Charter here, the charter agreement in <u>Karavos</u>
<u>Compania Naviera</u> was not signed, and allegedly resulted from a
series of telephone and telex[5] exchanges. 588 F.2d at 3. The
trial court found for plaintiff, and defendant argued on appeal
that there was insufficient evidence that its putative agent --
Repetti -- had apparent authority to bind it to the charter
agreement.

The Court of Appeals, in an opinion by Judge Friendly,
squarely held that Repetti's use of defendant's communication
facilities and his own claims of authority were insufficient to
support a finding of apparent authority and that the owner's
agent had an affirmative duty to make inquiry concerning
Repetti's authority:

> The court's finding of apparent authority was
> based largely on Atlantica's having permitted Repetti
> to work in its San Francisco office and to receive
> telex' and receive and make telephone calls. We do not
> follow the court in concluding that this alone justi-
> fied Grundvig [a ship broker] in believing that Repetti
> was authorized to commit Atlantica to a costly charter,
> with many more to come, and relieved him of the duty of

_____

[5]In the context of the present dispute, telexes are
indistinguishable from e-mails.

14

reasonable inquiry. Restatement of Agency 2d § 8, comments a & c, § 27, comment a; 2 Mechem, Agency § 1721, at 1307 (1914 ed.); Mechem, Outlines of the Law of Agency ¶ 94, at 661-62 (1952 ed.). Grundvig had had no previous dealings with Atlantica; indeed had never heard of it. Neither had he had any previous dealings with Resources. Prior to Repetti's trip to California, he had been told that the [an entity other than Atlantica] would be the charterer. Apart from Repetti's presence in Atlantica's office and use of its communication facilities, his sole bases for thinking that Repetti had authority to bind Atlantica were that Kenard [an individual not employed by Atlantica] allegedly told him that Repetti was an Atlantica employee a statement which, as indicated above, was not corroborated by Kenard and that Repetti told him he had authority to act. Neither of these afforded any ground for holding Atlantica. Professor Mechem stated many years ago that "[t]he authority of an agent, and its nature and extent . . . , can only be established by tracing it to its source in some word or act of the alleged principal. The agent cannot confer authority upon himself or make himself agent merely by saying that he is one." 1 Mechem, Agency § 285, at 205 (1914 ed.). See also Restatement of Agency 2d § 27, comment a, § 285; Edwards v. Dooley, 120 N.Y. 540, 551, 24 N.E. 827 (1890); National Surety Corp. v. Inland Properties, Inc., 286 F.Supp. 173, 180 (E.D. Ark. 1968), aff'd, 416 F.2d 457 (8 Cir. 1969). As Judge Levet shrewdly observed in Dr. Beck & Co. v. General Electric Co., 210 F. Supp. 86, 90 (S.D.N.Y. 1962), aff'd, 317 F.2d 538 (2 Cir. 1963):

> While agents are often successful in creating an appearance of authority by their own acts and statements, such an appearance does not create apparent authority. Mechem, Agency 61 (4 ed. 1952).

Moreover, even if Grundvig had been justified in believing that Repetti was an Atlantica employee, he was bound to inquire what his authority was; not every employee of a trading company has authority to fix a time charter, let alone a series of such charters. See Seacoast Electric Co. v. Franchi Bros. Const. Corp., 437 F.2d 1247, 1249-50 (1 Cir. 1971); P. D. Marchessini & Co., (New York), Inc. v. H. W. Robinson & Co., 287 F. Supp. 728, 733-34 (S.D.N.Y. 1967); People's Broadcast-

> ing Corp. v. George Batten Co., Inc., 231 App. Div.
> 446, 247 N.Y.S. 569 (1st Dept.), aff'd, 258 N.Y. 551,
> 180 N.E. 328 (1931); Engel v. Simmons, 230 App. Div.
> 454, 245 N.Y.S. 384 (1st Dept. 1930), aff'd, 257 N.Y.
> 612, 178 N.E. 817 (1931).

588 F.2d at 10.

Karavos Compania Naviera was followed in Herlofson
Mgmt. AS v. Ministry of Supply, Kingdom of Jordan, 765 F. Supp.
78 (S.D.N.Y. 1991). Herlofson also involved a claim to compel
arbitration arising out of the breach of an unsigned charter
party. The principal issue in Herlofson was whether Ward Marine,
a ship broker, had the authority to bind the Jordanian Ministry
of Supply. Like the present case and Karavos, the alleged
charter agreement in Herlofson was the product of a number of
telex exchanges between Ward Marine and the owner's ship broker.

After finding that Ward Marine lacked actual authority,
the Honorable Robert L. Carter, United States District Judge,
concluded that, in light of the decision in Karavos, defendant
could not be bound under a theory of apparent authority:

> The mere act of hiring Ward as its broker does not
> make the Ministry responsible for any belief by the
> petitioners' agents that Ward was authorized to fix
> contracts for the Ministry without its approval.
> Although it is customary in the shipping industry to do
> business through brokers, it is also customary for a
> broker to get the principal's approval before fixing a
> binding contract. . . . Thus, the hiring of Ward as a
> broker could not have created a reputation of authority
> to fix contracts without approval.
>
> . . . .

16

The Karavos case, like the present case, involved a petition to compel arbitration on an alleged fixture of a ship charter. The respondent in that case, Atlantica, had allowed an agent, Repetti, to use its telephone lines for the purpose of finding a vessel for Atlantica to charter. Id. at 6-7. The Second Circuit held that Atlantica's actions were insufficient, as a matter of law, to give Repetti apparent authority to fix a vessel. Id. at 10.

Petitioners attempt to distinguish Karavos by asserting that Repetti was not a broker but an alleged employee of Atlantica. P.Rep. 7. Repetti was, in fact, a representative of an independent trading company. Karavos, 588 F.2d at 3. Nonetheless, it is not important whether Repetti is called a "broker" or something else, since it is clear that Repetti's function was to secure vessels for Atlantica. See id. at 6. As petitioners point out, "not every employee of a trading company has authority to fix a time charter," id. at 10, but it is also true that not every employee of a ship broker has authority to fix a voyage charter.

In addition, petitioners had a duty of reasonable inquiry to determine the scope of McDaniel's authority. See id. at 10. To be sure, Herbert Construction [Co. v. Continental Ins. Co., 931 F.2d 989, 995 (2d Cir. 1991)], holds that reasonable inquiry is not a prerequisite to maintaining a cause of action based on apparent authority under New York law; rather, "[i]n the apparent authority context, the duty to inquire only arises when the facts and circumstances are such as to put [the third party] on inquiry, the transaction is extraordinary, or the novelty of the transaction alerts the third party to the danger of fraud." Id. at 996, (internal quotation marks and citations omitted). However, the duty of inquiry in this case is governed by federal maritime law, as expounded in Karavos, rather than by New York state law, as expounded in Herbert Construction. See supra note 7. Moreover, the "novelty" of McDaniel's claim of authority to fix without consulting the Ministry, together with rumors in the market calling Ward's authority into doubt, put [plaintiff's broker] on actual notice of the danger of fraud. See supra page 7. Seeking and obtaining [the] assurances [of the individual at Ward assigned to the matter], without more, is insufficient to relieve

[plaintiff's broker] of the duty of reasonable inquiry.
See Karavos, supra, 588 F.2d at 9.

765 F. Supp. at 88-89.

These cases compel the conclusion that plaintiff does
not have a viable maritime claim against Dabkomar AS. Plaintiff
has no evidence of any statements or conduct attributable to
Dabkomar AS that could create an appearance of Sentuna's author-
ity other than Sentuna's e-mail address. Karavos teaches
that the use of a putative principal's communications facilities,
such as an e-mail address, is insufficient as a matter of law to
sustain a finding of apparent authority, and that, in any event,
plaintiff had a duty, as a matter of maritime law, to make
inquiry to Dabkomar AS concerning Sentuna's authority. Plain-
tiff's failure to muster additional evidence of Sentuna's appar-
ent authority and its failure to offer any evidence of its making
inquiry concerning the scope of Sentuna's authority is fatal to
its claim against Dabkomar AS.[5]

---

[5]The closest plaintiff comes to offering evidence of
Sentuna's apparent authority is its citation to the results of
Google search for the terms "dabkomar sentuna." This search
yielded the following response:

**Dabkomar** Shipping SA - Ship Management Contact Us
...SARP **SENTUNA**: CHARTERING & OPERATIONS DEPT. MANAGER. Mobile
+90-532-436 77 79, E-Mail: sarpsentuna@**dabkomar**.com.tr, AZRU...
www.**dabkomar**.com.tr/default/asp?page=ContactS-20k-Supplemental
Result- Cached - Similar pages

(France Decl. Ex. 5). On December 12, 2005, I attempted to
access the hyperlink set forth in the Google response and
(continued...)

I have considered whether discovery would alter this
result and conclude that it would not. The existence of apparent
authority, or even a question of fact concerning apparent author-
ity, turns on Dabkomar AS's conduct, if any, toward plaintiff at
the time the alleged Charter was fixed and the facts known to
plaintiff at that time. Plaintiff presently knows as much as it
ever will concerning its knowledge at that time. Discovery will
not, therefore, change the result.

Thus, Dabkomar AS's motion to vacate the order of
attachment should be granted on the ground that plaintiff cannot
show that it has a prima facie maritime claim against Dabkomar
AS.

In the interest of completeness and to minimize the
possibility of a remand, I note that Dabkomar AS's remaining
arguments are not persuasive. To the extent Dabkomar AS is
claiming that the language of the putative guarantee is insuffi-

---

⁵(...continued)
received a response that the page could not be displayed because
"it might have been removed, had its name changed, or is
temporarily unavailable." Plaintiff makes no claim that it
relied on this Google response in entering into the Charter.

Given the obvious hearsay issue with respect to the Google
search response, the absence of any evidence concerning Dabkomar
AS's role, if any, in generating the Google search response, the
absence of any evidence concerning when the hyperlink in the
Google search response became inoperative and the absence of any
evidence that plaintiff even knew of the Google search at the
time it entered into the Charter, the Google search does not
constitute evidence that Dabkomar AS invested Sentuna with the
appearance of authority.

cient to constitute a guaranty of performance under English law, it relies on a single case -- <u>Wedge Marine Ltd. v. Oriental Union & Holdings Ltd.</u>, [2005] H.K.E.C. 1010 (C.F.I.), 2005 WL 835988 -- decided by the Court of First Instance of the High Court of the Hong Kong Special Administrative Region. Although neither side has briefed the issue, it appears from reading the decision that the Court of First Instance is, as its name implies, a trial court and not an appellate court. <u>See</u> <u>Martindale-Hubbel Int'l Law Digest</u> HK-5 (2005). It is unreasonable on its face to conclude that the decision of a trial court in Hong Kong constitutes binding precedent in England. I intend no disrespect to the courts of Hong Kong, and I assume that Hong Kong follows English precedent, but in a common law country, such as England, trial courts simply do not have the power to pronounce binding precedent.

Dabkomar AS's final argument, that plaintiff has admitted it has no claim against Dabkomar AS is contrary to law. Dabkomar AS bases this argument on the statement in plaintiff's memorandum of law that "'Dabkomar will have no liability unless and until liability is imposed and damages are determined against Dabkomar [Bulk]'" (Dabkomar AS's Reply Memorandum of Law, dated Nov. 15, 2005, at 4-5, <u>quoting</u> Plaintiff's Memo. at 13). This does not constitute an admission that no claim against Dabkomar AS currently exists. As a matter of substantive law, it is well

settled that a creditor may pursue a claim against a guarantor without first asserting a claim against the principal debtor. Terry v. Tubman, 92 U.S. (2 Otto) 156, 160 (1875); Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 243 F.2d 196, 199-200 (10th Cir. 1957). Plaintiff's claim against Dabkomar AS is also free from any procedural defect in this regard. Rule 8(e)(2) of the Federal Rules of Civil Procedure expressly permits a plaintiff to set forth claims "alternatively or hypothetically." See General Acquisition, Inc. v. GenCorp Inc., 766 F. Supp. 1460, 1476 (S.D. Ohio) ("Simply because [a claim] is phrased as an 'if-then' allegation does not warrant dismissal."). There is, therefore, no defect in asserting a hypothetical claim against Dabkomar AS as a guarantor.

Because plaintiff cannot prevail on its guarantee claim against Dabkomar AS, it cannot establish a prima facie admiralty claim and cannot meet its burden under Admiralty Rule E(4)(f). The Order of Attachment should, therefore, be vacated. In addition, because the attachment is the only basis for the assertion of jurisdiction over Dabkomar AS, its vacatur requires the dismissal of the action as to Dabkomar AS for lack of personal jurisdiction. Blueye Navigation, Inc. v. Oltenia Navigation, Inc., 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654 at *4-*5 (S.D.N.Y. Feb. 17, 1995); Int'l Marine Consultants, Inc. v. Karavias, 82 Civ. 8296 (CMM), 1985 WL 1515 at *3, *5-*6

(S.D.N.Y. June 3, 1985); see generally Swift & Co. Packers v. Compania Columbiana Del Caribe, 339 U.S. 684, 693 (1950); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A., 169 F. Supp.2d 1341, 1351 (M.D. Fla. 2001). Finally, Dabkomar AS's motion for security should be dismissed as moot as should its motion to dismiss the complaint for failure to state a claim. Plaintiff's motion for Rule 11 sanctions should be denied since I conclude that Dabkomar AS's motion is meritorious.

## IV. Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that: (1) Dabkomar AS's motion to vacate the attachment be granted; (2) Dabkomar AS's motion to dismiss the complaint as to it for lack or personal jurisdiction be granted; (3) Dabkomar AS's motion to dismiss the complaint for failure to state a claim and for security be denied as moot, and (4) plain-tiff's motion for sanctions be denied.

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the

Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, Room 201, 40 Centre Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN a WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 & n.2 (2d Cir. 1983).

Dated:   New York, New York
         December 12, 2005

                                        Respectfully submitted,


                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies electronically transmitted to:

William N. France, Esq.
Jack A. Greenbaum, Esq.
Healy & Baillie, LLP
61 Broadway
32nd Floor
New York, New York  10006

23

John J. Sullivan, Esq.
Hill, Rivkins and Hayden
45 Broadway
New York, New York  10006